IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | | |
|---|---|---|
| ERVIN N. REAID, individually and as | ) | |
| Husband of SHIRLEY L. REAID, | ) | |
| Deceased and Administrator of her | ) | |
| Estate, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | CIVIL ACTION FILE |
| | ) | NO. _____ |
| DR. DAVID B. WILSON, | ) | |
| DR. TRENT L PRAULT, | ) | |
| DR. ROMAN GALYSH, JR. | ) | JURY TRIAL DEMANDED |
| DR. J. RYLAND SCOTT, | ) | |
| DR. SHAHID ELAHI, | ) | |
| DR. JOHN HOSTETLER, and | ) | |
| FLOYD MEDICAL CENTER, | ) | |
| | ) | |
| Defendants. | ) | |

-------------------------------------------------/

## COMPLAINT FOR MEDICAL MALPRACTICE AND WRONGFUL DEATH

COMES NOW Plaintiff in the above-styled action and sues Defendants physicians for medical malpractice that caused Plaintiff's wife (Shirley Reaid, Deceased) pain, suffering and death. Plaintiff shows the Court the following facts:

## A. Parties

1.

Plaintiff is a resident of 12865 County Road 22, Center, Alabama 35960. He is the administrator of his wife's estate.

2.

Defendants are all Rome, Georgia Doctors who reside and are licensed to practice medicine in Georgia, and are subject to the jurisdiction of this Court.

3.

Defendant David B. Wilson, M.D. is a physician licensed to practice medicine in the State of Georgia. Said Defendant may be personally served with the Summons and Complaint at Harbin Clinic, Harbin Clinic/550 Redmond Rd, Rome, GA 30165. Defendant is subject to the jurisdiction and venue of this Court.

4.

Defendant Trent L. Prault, M.D. is a physician licensed to practice medicine in the State of Georgia. Said Defendant may be personally served with the Summons and Complaint at Harbin Clinic, 550 Redmond Rd, Rome, GA 30165. Defendant is subject to the jurisdiction and venue of this Court.

5.

Defendant Roman Galysh, Jr., M.D. is a physician licensed to practice medicine in the State of Georgia. Said Defendant may be personally served with the Summons and Complaint at Harbin Clinic, 1825 Martha Berry Blvd. NE, Rome, GA 30165. Defendant is subject to the jurisdiction and venue of this Court.

6.

Defendant John Ryland Scott, M.D. is a physician licensed to practice medicine in the State of Georgia. Said Defendant may be personally served with the Summons and Complaint at Harbin Clinic, 1825 Martha Berry Blvd. NE #E, Rome, GA 30165. Defendant is subject to the jurisdiction and venue of this Court.

7.

Defendant John Hostetler, M.D. is a physician licensed to practice medicine in the State of Georgia. Said Defendant may be personally served with the Summons and Complaint at Harbin Clinic, 1825 Martha Berry Blvd. NE #E, Rome, GA 30165. Defendant is subject to the jurisdiction and venue of this Court.

8.

Defendant Shahid Atta Elahi, D.O. is a physician licensed to practice medicine in the State of Georgia. Said Defendant may be personally served with the Summons and Complaint at 304 Turner McCall Blvd., Rome, GA 30165. Defendant is subject to the jurisdiction and venue of this Court.

9.

Defendant Floyd Medical Center is a domestic non-profit corporation organized and existing under the laws of the State of Georgia, with its principal place of business located at 304 Turner McCall Blvd., Rome, GA 30165, which, at all times material herein, has owed and/or operated and/or done business as a hospital business known as Floyd Medical Center. Said Defendant may be served

through its registered agent, Thomas H Manning, at 420 East Second Avenue, Suite 103, Floyd, Rome, GA 30161. Defendant Floyd Medical center is subject to the jurisdiction and venue of this Court.

## B. Jurisdiction and Venue

### 9.

The Court has jurisdiction over the lawsuit under 28 U.S.C. §1332(a)(3) because the suit is between citizens of different states. Plaintiff is a resident of Alabama and Defendants are all residents and doing business in Georgia and the amount in controversy exceeds $75,000, excluding interest and cost.

### 10.

Venue is proper in this Court because the malpractice alleged happened in Rome, Georgia. Personal and subject matter jurisdiction in this court exists over the parties to this action and the claims pled. One or more of the Defendants is a resident, has a business and/or office in, or a registered agent for service residing in Rome, Georgia, and the Defendants are joint torfeasors. Accordingly, venue is proper in this Court under 28 USC § 1332 and 28 USC §1991.

## COUNT 1

### 11.

Medical Malpractice, Plaintiff multi count complaint asserts that the defendant physicians injured Mrs. Shirley Reaid when they failed to exercise that

degree of skill and care in her treatment that is consistent with the skill and care of physicians generally in the field by other physicians practicing in their area of medicine thereby failing to the standard of care as follows:

(1)     Shirley Reaid was negligently screened and evaluated prior to surgery.

(2)     The surgery of the 30th of November was negligently performed when Mrs. Reaid's intestines were replaced in her body cavity in such a way as to injure her intestines by crimping the blood supply artery causing the death of the intestines.

(3)     The surgeon closed the surgery with the aorta femoral artery bypass not containing the flow of blood and actively bleeding.

(4)     The main artery to Mrs. Reaid's colon, the mesenteric artery, began bleeding following the surgery of the November 30th and a stint was attempted by defendant Wilson on December 4th. At that time the signs and symptoms of a blockage of the colon had persisted continuously since the colon had been negligently replaced in a twisted condition. The physicians had negligently failed to diagnose the problem and do a corrective surgery. No notes appear in the record of the treating physician attending Mrs. Reaid during that time until December 4th. Mrs. Reaid complained bitterly of pain. She had had severe nausea that produced a black substance resembling coffee

grounds. This is recognized as the sign of attempted digestion of blood.

(5)    Floyd medical center staff negligently failed to notify the treating physicians of this development.

(6)    When the condition was addressed the physicians negligently failed to identify the blockage of the jejunum and colon that was starving those organs of blood and causing their progressive death. The consulting physician merely placed a drain pump to remove the substance.

12.

Physicians Dr. Galysh, Dr. Scott, Dr. Elahi and Dr. Hostetler were consulted prior to the surgery on December 15 were negligent and their performance was beneath the standard of care when they failed to diagnose the loss        of the blood supply to Mrs. Reaid's intestines until 15 days after the operation and after the intestine had died, when it was obvious that Mrs. Reaid was in an emergency situation caused by the surgery of November 30, 2015.

13.

This patient presented with Ischemic rest pain of bilateral lower extremities. An operation for Aortobifemoral bypass was scheduled for 11/30/2015 based on this diagnosis. Required test procedures for this operation had been completed previously and showed no problems. The lead surgeon was Dr. David Bailey

Wilson, who was assisted by Dr. Trent Prault. Anesthesia was administered by Dr. Jodi Kuhlman. Preoperative cardiac and pulmonary assessment was "pretty good". During the operation, "the colon was retracted cephalad and the small bowel was retracted rightward". At the end of the operation, "the bowel and colon were returned to their anatomic position". The groin incisions were then closed. No comment is made about the patient's condition or follow-up treatment. Surgery "went well". Patient was moved to ICU "having more pain than expected" along with bloody bowel movement. These Physicians failed to follow up on these symptoms and signs consistent with a bowel obstruction caused by their incorrect placement of Mrs. Reaid's colon and small intestines. This failure violated the standard of care. Dr. Wilson and Dr. Prault negligently failed to exercise that degree of skill and care of physicians employed by the medical community generally under the similar conditions and like surroundings.

14.

On 12/04/2015, the patient remained in the hospital with a history of nausea and vomiting. During the night of 12/03/2015, she began to have frank hematemesis with black melenic stools per Dr. Roman L. Galysh. Dr. Galysh advanced an endoscope into the esophagus and found "coffee-ground material". About 2 liters of material were suctioned from the stomach. After 5 days without any additional treatment, this patient was in distress. Dr. Galysh failed to exercise

that t degree of skill and care ordinarily employed by the medical profession under similar conditions and like surrounding circumstances. When he failed to diagnose the emergent nature of her condition regarding the intestinal impingement and obtain or give her treatment for that condition.

15.

On 12/06/2015 Dr. Shahid Atta Elahi was consulted for a complaint of acute respiratory failure. The patient had developed some shortness of breath and some respiratory issues. Dr. Elahi's diagnosis was hospital acquired pneumonia and he recommended aggressive bronchodilator treatment. Dr. Elahi failed to exercise that t degree of skill and care ordinarily employed by the medical profession under similar conditions and like surrounding circumstances. When he failed to diagnose the emergent nature of that condition regarding the intestinal impingement and obtain or give her treatment for that condition.

16.

Dr. John Hostetler was consulted on 12/09/2015. He says the films do not indicate pneumonia but he indicates a "rocky" postoperative course with development of a partial small bowel obstruction and some hematemesis. Other indications were some fluid in the sigmoid colon and an elevated white blood cell count. Dr. Hostetler indicates that the patient was tender all over and mildly distended.  Dr. Hostetler failed to exercise that t degree of skill and care ordinarily

employed by the medical profession under similar conditions and like surrounding circumstances. When he failed to diagnose the emergent nature of her condition regarding the intestinal impingement and obtain or give her treatment for that condition.

17.

The patient was still in the hospital on 12/15/2015 when Dr. John Ryland Scott was brought in. Dr. Scott's preoperative diagnosis was necrotic colon. This was confirmed in postoperative notes. An exploratory laparotomy of the recent laparotomy was performed. During this procedure, 140 cm of jejunum was resection. There were several areas of puncture perforation along the ant mesenteric border of the ischemic proximal small bowel consistent with ischemic injury. "The descending and sigmoid colons were frankly necrotic and a soft, soggy consistency with essential disintegration of the colon, with a wet tissue paper-type consistency." There was also liquid succus contamination of the abdominal cavity. This contamination was bad enough that it was necessary to leave the wound open. A colostomy was also performed during this surgery by Dr. Scott. Quite a bit of physical therapy was required. Dr. Scott told the family that "We crimped the intestine" The records do not reflect that Dr. Scott participated in the November 30 surgery but if he participated in the operation that harmed Ms. Shirley Reaid, then he failed to follow that standard and care which under similar

conditions and like circumstances is ordinarily employed by the medical profession generally in that surgery. Dr. Scott when he crimped the intestine and colon of Mrs. Shirley Reaid.

18.

Further surgery also had to be performed by Dr. Wilson on that same day. Diagnosis at this time was "ischemic gut, status post partial small-bowel resection and left colectomy". Preoperative imaging showed stenosis of the SMA. This was catheterized and stented during the procedure that followed.

19.

Intestinal necrosis, ischemic bowel, dead bowel, and dead gut are all terms for the same condition. The intestine and/or bowel have become twisted cutting off blood flow to the affected area causing death to that part of the organs involved.

20.

This is a dangerous condition that can be fatal if not properly treated immediately. Based on these doctor's reports for the surgery of 12/15/2015, this was the condition of this patient two weeks following the surgery of 11/30/2015. During the surgery of 11/30/2015, the intestine and bowel that had been retracted, was not properly returned to the body cavity and a condition was created that resulted in blood flow being cut off and the organs dying which lead to numerous complications for this patient, ultimately resulting in her death.

21.

On 12/17/2015 Dr. Jennifer D. Barbieri was called in for consultation due to "respiratory failure". She indicates that this patient was presented to the hospital for and "elective aortobifemoral bypass". The patient has had ongoing issues of vomiting and low-grade fever. There appeared to be some fecal contamination of the aortobifemoral graft. A chest X-ray showed left basilar atelectasis and possibly a small effusion. Dr. Barbieri notes that the patient is tender to palpation. Her impressions are peripheral arterial disease, status post aortobifemoral bypass; ischemic colitis, status post resection; mesenteric ischemia, status post superior artery stent; and septic shock likely secondary to intra-abdominal sepsis. There was some fecal contamination intraoperatively. "Patient is critically ill."

22.

On 01/22/2016, this patient was finally discharged from the hospital after a stay of some two months in which she endured four major surgeries and countless procedures and tests. She is leaving the hospital in worse condition that when she entered. On 02/17/2016 she returns to Dr. Wilson's office for the "first postop office visit after prolonged, complicated hospitalization". Her nutrition is poor and she reports nausea, poor appetite, and some emesis with most foods. The patient

also went back to Dr. Scott on 03/01/2016 for a postop visit. No notes are made of this visit.

23.

Upon information and belief, Defendants provided care and treatment to Plaintiff's wife Shirley Reaid, Deceased. They were an actual and/or apparent and/or ostensible agent and/or employee of Floyd Medical Center and were acting in the course of said employment, and within the scope of said employment, at all times during which they provided care and treatment to Shirley Reaid (deceased) at all times material hereto. Floyd Medical Center is liable to Plaintiff for any and all damages attributable to the negligent acts and/or omissions of Defendants Physicians under the law of agency and the doctrine of respondeat superior.

24.

On 05/05/2017, Shirley Reaid was readmitted to Floyd Medical Center through the ER. Her problems consisted of a bowel filled with fluid and gas, PC pH and PC pCO2 are critical, abdomen is tender in all quadrants, bowel is hypoactive, acute urinary retention, and bloody drainage. The diagnosis is acute renal failure, acute pyelonephritis, peripheral artery disease, diabetes type 2, hypertension, and hyperlipidemia. An exploratory laparotomy was performed but nothing was done. The impression as noted by Dr. Wilson was "severe sepsis". On

05/08/2017 Mr. Reaid asked that the "heroics be stopped" and Shirley Reaid was pronounced dead by Dr. Gary Killen at 3:12.

25.

Shirley Reaid entered Floyd Medical Center on 11/30/2015 for an elective aortobifemoral bypass surgery. During her two-month hospitalization and subsequent eighteen-month struggle, she endured one surgery after another, one treatment after another, and one procedure after another. After the surgery of 11/30/2015, performed by Dr. Wilson and Dr. Prault, she never enjoyed another healthy day of existence. All her problems over this twenty-month period and her eventual death are caused by the malpractice that happened in that operating room on 11/30/2015.

26.

Mrs. Reaid suffered pain and suffering and loss of bodily function and mobility for the year prior to her death on the 8th day of May, 2015,  in the amount of $30,000,000.00, because of defendants' medical negligence.

27.

Plaintiffs incurred medical expenses including physicians bills and hospital bills in the amount of $2,000,000 prior to her death because of defendants' medical negligence.

28.

Plaintiff's estate incurred funeral expenses in the amount of $8,000.00 because of the medical negligence of the defendants' medical negligence.

## Count 2

29.

Loss of consortium, Plaintiff Mr. Erwin Reaid is the widower of Mrs. Shirley Reaid; he suffered loss of her services, companionship and revenue as a result of defendants' medical negligence alleged in the above counts 1 through 28 in the amount of $1,000,000 .00.

## Count 3

## WRONGFUL DEATH

30.

Plaintiff realeges and incorporates by reference paragraph 1 through 28 above.  Defendants' medical negligence alleged above caused Mrs. Reaid to die on the 8th day of May, 2017.

31.

Plaintiff Ervin N. Reaid as her widower brings this action for wrongful death.                                        32.

Georgia law allows damages for the wrongful death of a wife. The amount of damages is to be the full value of her life without reduction for expenses. The

value is $30, 000, 000.

## Damages

33.

a.   Medical expenses $2,000,000.00

b.   Physical pain and mental anguish $30,000,000.00.

C.   Loss of consortium $1,000,000.00.

D.   Full value of the life of Mrs. Reaid $30,000,000.00.

**WHEREFORE,** Plaintiff respectfully prays as follows:

a.   That summons, and process be issued requiring Defendants to be served as provided by law and requiring the Defendants to answer this Complaint;

b.   Plaintiff hereby demand a trial by jury of all issues in this action;

c.   That Plaintiff have and recover against Defendants individually and as joint tortfeasors, jointly and severally the damages pleaded above in paragraph 33;

d.   That this Court cast the cost of this action against Defendants; and,

e.   That Plaintiff has such other and further relief to which he may be entitled.

3 Central Plaza, Box 405
Rome, GA 30161
(706) 291-4019
attorneysatcher@gmail.com

*/s/James A. Satcher, Jr.*
JAMES A. SATCHER, JR
GA STATE BAR No. 626925
*Attorney for Plaintiff*